IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN V.,[1]

      Plaintiff,

    v.                                                                              Civ. No. 21cv364 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when she denied her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues the ALJ erred by not incorporating mental health limitations from step two into the residual functional capacity finding at step four. The Court agrees that the ALJ was required to consider mental impairments in step four, but failed to do so. Plaintiff also argues that constitutional error existed due to the statutory for-cause removal provision of the Social Security Commissioner. The Court disagrees that Plaintiff has shown any harm as a result of the unconstitutional provision. But because of the error with respect to mental impairments, the Court GRANTS Plaintiff's Motion to Remand, Doc. 19, and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 6, 17, 18. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court

**APPLICABLE LAW**

  A.  <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

  (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

  (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

  (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

  (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past

---

reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>  relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

*Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

**I. The ALJ Did Not Analyze All Impairments At Step Four.**

In a social security case, an ALJ "must evaluate the effect of a claimant's mental impairments on her ability to work." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). At step two of the Commissioner's five-step analysis, this requires the ALJ "to determine whether the mental impairment is 'severe' or 'not severe.'" *Id.* "But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).[4]

In *Wells*, "the ALJ found that Ms. Wells's alleged mental impairments were medically determinable but non-severe." *Id.* at 1065. "He then used language suggesting he had excluded them from consideration as part of his RFC assessment, based on his determination of non-severity." *Id.* That language was: "These findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id.* at 1069. This was error; "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.* at 1065, 1069.

The Tenth Circuit proceeded to ask, however, whether the error was harmless because the ALJ did "separately discuss Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination." *Id.* at 1069. "This discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed

---

[4] The regulations state: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC." *Id.* "But we need not determine whether the discussion was procedurally adequate, because the ALJ's conclusions on this point were not supported by substantial evidence." *Id.* The ALJ's failure to provide a discussion, supported by substantial evidence, of Ms. Wells's non-severe impairments at step four thus required remand. *Id.* at 1071.

Plaintiff argues that *Wells* applies and governs this case. Doc. 20 at 5. The Court agrees that this case resembles *Wells*. Here, at step two, the ALJ found that "the claimant alleged disability due to anxiety" and "[m]edical records included a diagnosis of anxiety." AR 19 (citing exhibits 3E/2 and 1F/8). Further like the ALJ in *Wells,* the ALJ here then concluded that the mental condition was non-severe: "The claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." AR 20. In reaching this conclusion, the ALJ analyzed the four domains of functioning and found that Plaintiff has (1) mild limitations in understanding, remembering, or applying information; (2) no limitations in interacting with others; (3) mild limitations in the ability to concentrate, persist, or maintain pace; and (4) no limitations in her ability to adapt or manage herself. AR 20-21. Despite finding that Plaintiff has mental impairments, the ALJ did not "consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four," as he must under the regulations and under *Wells,* 727 F.3d at 1064.

Nor does an alternative path to affirmance identified in *Wells* apply. Recall that in *Wells*, the Tenth Circuit implied the ALJ could have cured the error by including a discussion, adequately supported by substantial evidence, of the claimant's mental impairments at step four. But here, unlike in *Wells*, the ALJ did not separately discuss Plaintiff's mental impairments "to

some degree" when assessing the evidence as part of her RFC determination. *Cf. Wells*, 727 F.3d at 1069. It appears that the ALJ may have contemplated doing so given that, in step two the ALJ wrote: "As discussed below, the objective medical records including examination findings indicated no limitation in this area of functioning." AR 20-21 (citing exhibits 1F/9; 4F/3, 6; 6F/17; 8F/8; 9F/29; 12F/17). But the ALJ did not then "discuss below" these medical records at any point in step four. The ALJ does not even *cite* all of these medical records again in the opinion, and for the records she does cite again, it is to discuss what they say about Plaintiff's physical functioning—never her mental functioning. *E.g.*, AR 24 ("other examination records indicated no acute distress, well-healed incisions, no swelling, negative Homans sign, intact neurovascular findings (Ex. 1F/9), normal range of motion (Ex. 1F/11), and no gait abnormalities (Ex. 8F/8)."); *id.* ("the recent exam records indicated no gait abnormalities, along with no acute distress (Ex. 9F/16, 29; 12F/17)."). Therefore, even applying the dicta in *Wells* does not salvage the ALJ's step four discussion. There simply is no step-four discussion pertaining to mental impairments.

The Commissioner argues that the ALJ "properly considered Plaintiff's non-severe anxiety in the context of the RFC finding." Doc. 24 at 16. But the Commissioner cites boilerplate in step three as support for this contention:

> Here, the ALJ properly ***considered*** Plaintiff's non-severe anxiety in the context of the RFC finding (Tr. 21 ("The following [RFC] reflects the degree of limitation the undersigned has found in the 'Paragraph B' mental function analysis.")). But the ALJ expressly stated that Plaintiff's anxiety "d[id] not restrict [her] ability to perform basic work activities" (Tr. 21). It is therefore entirely reasonable that the RFC did not include work-related mental restrictions.

Doc. 24 at 16. The boilerplate statements on AR 21 are not a narrative discussion satisfying the ALJ's duty to consider the impairments, both severe and non-severe, at every step of the

disability determination process, including step four. Therefore, the Court agrees with Plaintiff that there was error under *Wells*.

Nonetheless, the Commissioner argues, "despite having the burden of proof on RFC, Plaintiff does not highlight any medical evidence that would support the inclusion of [mental functioning] limitations." Doc. 24 at 17. The Court reads this as a harmless error argument: even had the ALJ properly considered mental impairments at step four, there is no evidence in the record that could have supported greater limitations than those included in the RFC.

The Court disagrees with the Commissioner's statement about the relative burden of the parties in this instance. While it is true that the claimant bears the burden of showing disability, courts usually require the government to make and develop a harmless error argument before considering one. *Cf. Seever v. Barnhart*, 188 F. App'x 747, 752 n.1 (10th Cir. 2006) (a court may invoke harmless error on behalf of the Commissioner where "the record is not overly long or complex, harmlessness is not debatable, and reversal would result in futile and costly proceedings.").[5] The Court finds the record does not support a finding of harmless error. That is, although Plaintiff did not cite it, medical evidence supporting mental functional limitations does exist. After a psychological consultative examination, Dr. Owen diagnosed Plaintiff with "adjustment disorder with anxiety" and found she had a "mild difficulty" in understanding and remembering detailed or complex instructions and "no to mild difficulty" in her ability to attend and concentrate. AR 475-76.

The failure to consider this evidence is harmful. The ALJ found that Plaintiff could return to her past relevant work, which are skilled occupations with specific vocational preparation

---

[5] Although this case is unpublished, the Court cites it for its persuasive value.

("SVP") of 5 and 7. Doc. 20 at 8-9; AR 27-28.[6] Skilled work requires "dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c). A reasonable factfinder could credit Dr. Owen's opinion and determine that Plaintiff is limited to some degree in the ability to understand and remember detailed or complex instructions and should not be assigned to work in which this skill is crucial.

The Court cannot find the *Wells* error harmless on this record, and so remands for further proceedings.

## II. The Court Denies Plaintiff's Request for Relief Based on the Unconstitutional Removal Provision.

Plaintiff filed her Complaint on April 21, 2021. Doc. 1. In the Complaint, she challenges the denial of her application for social security benefits. *Id.* The Complaint does not bring any constitutional challenges. On December 5, 2021, however, Plaintiff filed her motion to remand and a brief in support which brings a constitutional challenge based on the for-cause removal provision in the Social Security Act. Doc. 19; Doc. 20 at 9-12.[7] The Commissioner is the sole head of the Agency, serves for six years, and cannot be removed by the President except for cause. 42 U.S.C. § 902(a)(3) ("neglect of duty or malfeasance in office"). This, Plaintiff argues, violates the Constitution's separation-of-powers principles.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court found that the statute governing the Consumer Financial Protection Bureau ("CFPB") violated

---

[6] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT App. C, Sec. II, 1991 WL 688702. Skilled work corresponds to an SVP of 5 through 9. SSR 00-4p, 2000 WL 1898704, at *3.

[7] The Commissioner does not argue that the claim is not before the Court on the basis that it was not in the complaint.

separation-of-powers principles because it prevented the President from removing the CFPB Director at will. 140 S. Ct. 2183 (2020). In *Collins v. Yellin*, the Supreme Court held that the plaintiffs had standing to challenge a similar provision restricting the removal of the director of the Federal Housing Finance Agency ("FHFA"). 141 S. Ct. 1761, 1778-79 (2021). But *Collins* also held that the unconstitutionality of the provision does not automatically confer a right to relief. Instead, it required the plaintiffs to demonstrate an entitlement to relief by demonstrating actual harm. 141 S. Ct. at 1788-89. In doing so, the Court distinguished an unconstitutional *removal* provision from an unconstitutional *appointment* provision:

> All the officers who headed the [agency] during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] in relation to the [challenged action] as void.

*Id.* at 1787. That is, an unconstitutional removal provision does not automatically translate into an "exercise of power that the actor did not lawfully possess" or a "basis for concluding that any head of the [agency] lacked the authority to carry out the functions of the office." *Id.* at 1788.

Nonetheless, the Supreme Court left open the possibility that the plaintiffs could potentially demonstrate harm flowing from the removal provision:

> [T]he possibility that the unconstitutional restriction on the President's power to remove a Director of the [agency] could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788-89. The Supreme Court remanded the case for the lower courts to resolve in the first instance the question of whether the provision had inflicted any such harm on the plaintiffs. *Id.* at 1789.

The Commissioner concedes in her response that the for-cause removal provision "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Doc. 24 at 3. But the Commissioner resists the conclusion that such violation requires reversal in this case.

The Commissioner argues that the ALJ who adjudicated this case did so under the authority of an *acting* commissioner (Nancy Berryhill), who was removable by the president at will. *Id.* at 6-7. In reply, Plaintiff concedes her argument to the extent it is based on the ALJ's decision. Doc. 25 at 5. Nonetheless, Plaintiff persists in her constitutional challenge based on the decision of the Appeals Council, who affirmed the ALJ's decision "pursuant to a delegation of authority from former Commissioner of SSA Andrew Saul," who was subject to the for-cause removal provision in the statute. *Id.* at 6. Plaintiff's argument thus removes any focus on whether an acting commissioner was removable by the president at will, and instead places focus on the import of "delegation of authority" by an appointed Commissioner.

Also focusing on this argument, the Commissioner asserts the Court should not consider Plaintiff's challenge because Plaintiff cannot show she suffered any compensable harm. Doc. 24 at 8-10. The Commissioner argues that "Plaintiff cites to no facts indicating that President Biden wanted to remove, but was prevented from removing, Commissioner Saul before her claim was decided." *Id.* at 10. "Nor does Plaintiff show that but for the removal restriction, her claim would have been decided any differently." *Id.* at 10-11.

In reply, Plaintiff argues that the following facts make it "unmistakably clear that President Biden wished to terminate Commissioner Saul immediately upon assuming the Presidency":

- It was the White House which affirmatively and immediately sought advice from DOJ as to whether President Biden could fire Commissioner Saul after the Supreme Court issued its decision in *Collins*.

- The day after DOJ issued its Memorandum Opinion in the wake of *Collins* confirming that Mr. Saul could be removed from office by the President, President Biden immediately did so.

- The White House's official statement on removing Mr. Saul from office confirms that President Biden had wished to fire Commissioner Saul from the time of the President's inauguration:

  > Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

Doc. 25 at 6-7. Plaintiff emphasizes that this statement specifically targeted the Appeals Council's "due process protections" and the "politicized" nature of disability benefits adjudications. *Id.* at 7-8. Plaintiff argues this demonstrates a "direct causal nexus" between the for-cause removal provision and the harm Plaintiff suffered by the Appeals Council's denial of her appeal.

No court has been persuaded by arguments similar to the one Plaintiff now makes. *See Linnear v. Kijakazi*, No. 21-98, 2022 WL 1493563, at *9-10 (S.D. Ga. May 11, 2022) (collecting cases); *see also, e.g.*, *Kristine A. v. Comm'r of Soc. Sec.*, No. 21-5239, 2021 WL 5918128, at *8 (W.D. Wash. Dec. 15, 2021) ("Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and 'reduced due process protections for benefits appeals hearings,' this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one. Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce

the process available to a claimant, it is the courts—rather than the Commissioner, the President, or White House officials—that determine whether a claimant received the process due." (citation omitted)); *Perry v. Saul*, No. 21-480, 2022 WL 959160, at *3 (D. Nev. Mar. 29, 2022) ("Plaintiff presents no evidence that his rights were violated by any specific action taken by the Commissioner or the ALJ at any point in the process."); *Smith v. Kijakazi*, No. 21-59, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8, 2022) (the plaintiff "does not supply evidence that Commissioner Saul or President Biden played a role in her claim, even if President Biden's regulatory philosophy or policy goals indeed stood at odds with those of the Commissioner he removed"); *James D. v. Comm'r of Social Security*, No. 21-5413, 2022 WL 522994, at *7 (W.D. Wash. Feb. 22, 2022) ("Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former President in the ALJ's decision."); *Lisa Y. v. Comm'r of Soc. Sec.*, No. 21-5207, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims."); *Kathy R. v. Kijakazi*, No. 21-95, 2022 WL 42916, at *4 (D. Me. Jan. 5, 2022) ("the fact that President Biden removed the Commissioner soon after the DOJ's opinion regarding the applicability of the *Collins* decision to the statute does not necessarily mean President Biden would have removed Commissioner Saul within three weeks of President Biden's inauguration."),[8] *report and recommendation adopted*, 2022 WL 558359 (D. Me. Feb. 24, 2022).

In this case, Plaintiff has not identified the "due process" violation in the Appeals Council's decision in her case or shown that it is the relevant unspecified "due process" violation

---

[8] Here, the Appeals Council's decision issued on February 26, 2021, or just over five weeks after the inauguration.

13

referred to in the White House's official statement. The only legal error Plaintiff argued before this Court pertained to the ALJ's decision. Plaintiff does not allege any error at all by the Appeals Council, much less one related to due process. Nor does Plaintiff allege that any decision the ALJ made in this case was affected by a policy put in place by Commissioner Saul with which President Biden disagreed. The only error Plaintiff alleges is that the ALJ did not follow a requirement that has been in place at least since the Tenth Circuit published *Wells* in 2013, a decision unrelated to, and unaffected by, the identity of the Commissioner.

      Moreover, even considering the Supreme Court's broad language about the President wanting to remove the Commissioner, but feeling constrained by the statute from doing so, Plaintiff's argument is based on speculation. Plaintiff cites language from "the White House" that indicates the President was considering removing the Commissioner and, once he did, providing justification for that decision. These statements do not support Plaintiff's argument that, but for the anti-removal provision in the statute, the President would have removed the Commissioner earlier. Further, although the President's decision to remove the Commissioner the day after the Department of Justice provided a *Memorandum Opinion* on the topic does not mean the President was constrained from removing the Commissioner until this *Memorandum Opinion* was released. Indeed, it was not the issuance of the Department of Justice's analysis in an advisory *Memorandum Opinion* that provided the President authority to remove the Commissioner; instead, that authority derived from powers reserved for the President in the United States Constitution that the United States Supreme Court recognized in *Selia Law* months before President Biden took office.

      Specifically, the United States Supreme Court decided *Selia Law* on June 29, 2020, approximately 7 months before President Biden took office. As the Supreme Court later

explained in *Collins*, "The Recovery Act's for-cause restriction on the President's removal authority violates the separation of powers. **Indeed, our decision last Term in *Seila Law* is all but dispositive**. . . **A straightforward application of our reasoning in *Seila Law* dictates the result here.**" *Collins,* 141 S. Ct. at 1783-84 (bold added). Although the Supreme Court's subsequent decision in *Collins* may have bolstered the White House's confidence in its authority to remove the Commissioner, the Supreme Court had already held that removal bars, such as the one at issue here, violated that separation of powers clause. Thus, the White House could have relied on *Selia Law*, decided months before President Biden took office, as authority to remove the Commissioner. Indeed, Plaintiff concedes as much in noting that "The Biden Administration apparently recognizes this constitutional defect as it has fired Mr. Saul *under the authority of Seila Law*." Doc. 20 at 11 (italics added). The Biden Administration was undoubtedly aware of *Seila Law* when President Biden took office. Given Plaintiff's acknowledgment that President Biden removed the Commissioner under the authority of *Seila Law*, to the extent inferences are to be drawn, the most logical inference is that, given *Seila Law*, the for-cause removal provision in the Social Security Act, did not constrain, or delay, the President from removing the Commissioner. The record simply does not contain sufficient evidence for the Court to find that the President wanted to remove the Commissioner earlier, but only did not because he felt constrained by the statute's for-cause removal provision.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand, Doc. 19, is **GRANTED**.

*/s/ Steve Yarbrough*
_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**